## B. F. Jones v. The Consolidated P. and F. Co.

1. INSTRUCTIONS—*Abstract Principles of Law Not Warranted by the Facts.*—An instruction containing an abstract principle of law not warranted by the facts in the case and calculated to mislead the jury, is erroneous.

2. SAME—*Assuming Questions of Fact.*—An instruction which tells the jury, if they believe from the evidence that the defendant received full information from an employe of his acts in the premises, on or before January 1st, and remained silent and inactive until some time in March, it was not a reasonable time in which to dissent from the acts of such employe, is erroneous, as the question whether the delay for the length of time mentioned was reasonable under all the circumstances of the case was a question of fact for the jury and not a question of law.

**Assumpsit,** on a contract. Appeal from the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1901. Reversed and remanded. Opinion filed January 24, 1902.

R. S. McILDUFF, attorney for appellant.

C. C. & L. F. STRAWN, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

About October 20, 1897, M. B. Ratner, representing The Consolidated Portrait and Frame Company of Chicago, called upon appellant, B. F. Jones, at his place of business in Gibson City, Illinois, where Jones conducted a store under the name of "Boston Store Co.," and presented to the latter a certain advertising scheme. By this scheme as suggested, Ratner proposed to canvass the city for the purpose of procuring orders for the enlarging of portraits. The work of enlarging the portraits was to be done free by appellee, but the parties who gave the orders were to pay $2.98 for the frames. The pictures and frames were to be furnished for $2.70, leaving a margin of twenty-eight cents to appellant to pay for freight, other expenses and profit. The principal advantage to accrue to appellant, however, by the proposition, was the fact that each person ordering a picture was to be

required to sign an agreement to trade to the amount of $10 at appellant's store. Appellant, who was about to leave the city, considered Ratner's proposition favorably. He called a clerk, Mrs. Raymond, told her of the proposition in the presence of Ratner, requested her to put it down in writing, left the store and did not see Ratner again. There is a controversy as to what was said in the conversation mentioned and as to the terms of the agreement between Jones and Ratner. Ratner swore that he sold the portraits and frames directly to Jones, while the latter and Mrs. Raymond swore that Jones was simply to receive and distribute the portraits and collect $2.98 each from the parties who had ordered them; that he was to receive as a commission what remained of the twenty-eight cents, which he was to be allowed to retain from the price of each picture, after the payment of freight and other expenses, and was also to have the advantage of the additional trade which the transaction would bring to his store. On October 25, 1897, when the work of canvassing the city was completed, contracts had been taken for some sixty-two portraits and on that day Ratner presented an order for the same to Mrs. Raymond, who signed it "O. K. Boston Store Co. D. R."

About the first of December the portraits and frames were received by appellant. The parties who had given orders for the same were notified, but the work was examined and some forty persons refused to accept the portraits ordered, upon the ground that either the work or the price was unsatisfactory. The circulars sent out had assured persons ordering the portraits that if the same were not satisfactory they need not be accepted until made so. For the portraits and frames delivered appellant received $47.40, after deducting the commission claimed by him. There was some correspondence between Jones and appellee but nothing seemed to have been done to make the refused portraits satisfactory to the persons ordering them, and in March, 1898, Jones, being about to remove his stock of goods from Gibson City, returned the portraits which had been refused, to appellee. Jones tendered the $47.40 to ap-

pellee but the latter refused to accept it and brought suit for the full amount claimed to be due for all the portraits and frames sent Jones, which is fixed at the sum of $179.40.

Appellee, for a bill of particulars, filed a copy of the so-called order signed by Mrs. Raymond and a statement of the pictures and frames sent appellant and the prices charged therefor. Appellant denied under oath the execution of the so-called order. There was a verdict and judgment for appellee for $89.10, from which the defendant below appeals.

A preponderance of the proof clearly supports the claim of appellant that he did not buy the goods outright, but that he took them to distribute for appellee for what he would receive from the commission paid him and the benefit to be derived from the expected increase in his business. It is claimed by appellee that the paper signed by Mrs. Raymond was a direct order for the portraits and frames and that she had implied authority, by reason of her position, to give such an order. We think it obvious, however, from the evidence, that Mrs. Raymond, in attaching her "O. K." and the name under which the store was conducted to the claimed orders, had no intention of making a new contract with appellee different from that which Jones had made, but only intended, as she swears, to give Ratner something to account for the orders which he left with her. But even if she had intended to give an absolute order for the purchase of the goods, the evidence clearly shows that she had no authority to make such a contract.

The witness Maud McClintock, whose deposition was read in evidence, after stating that she was in the employ of appellant at the time and place in question, was asked in reference to appellant, "Who was his agent in Gibson City at that time?" This question was objected to, but the objection was overruled and the witness thereupon answered, "Mrs. Della Raymond." Jones did not live in Gibson City, and the authority to Mrs. Raymond to act for him was contained in a letter written to her by appellant August 19, 1897, in which her duties were clearly defined. It appears from the letter that she was not to have general charge of

the business at Gibson City, but was to act only in a limited capacity. The question and answer implied that Mrs. Raymond was the agent of appellant for the general conduct of the business at Gibson City. As between appellant and Mrs. Raymond, the written authority shows that she was not such an agent; and the question whether she was permitted by appellant to so act as to authorize third persons to believe that she was in general charge of the business was a question of fact for the jury. The witness might properly have stated what Mrs. Raymond did in and about the business, but it was improper for her to state her conclusion that Mrs. Raymond was appellant's agent, and the objection to the question should have been sustained.

Instruction No. 4, given for appellee, told the jury " that a principal who, with the full knowledge of all the material facts affecting his rights, receives the benefit of an unauthorized agreement made for him by one purporting to be his agent, is precluded thereby from questioning the agent's authority in the transaction. This is an abstract principle of law which is not warranted by the facts in the case and might have misled the jury. As applied to this case it assumes that appellant had full knowledge of all the facts concerning the indorsement of the so-called order by Mrs. Raymond, when there is no evidence that he knew of that fact until after the trouble arose over the demand of appellee of payment for the refused portraits.

Instruction No. 5, given for appellee, told the jury that if they believed from the evidence " defendant received full information of the acts of the said Della Raymond in the premises on and before January 1, 1898, and remained silent and inactive until some time in March, 1898, then that was not a reasonable time in which to dissent from the acts of the said Della Raymond." This instruction is manifestly erroneous. The question whether the delay for the length of time mentioned was a reasonable one or not, under all the circumstances of the case, was a question of fact for the jury, and not a question of law.

For the reasons above given the judgment of the court below will be reversed and the cause remanded.